IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| VIRGINIA M. BOGAN, | ) | Case No. 05-12725 |
| | ) | |
| Debtor. | ) | |
| | ) | |

**MEMORANDUM OPINION**

On October 18, 2005, the United States Bankruptcy Administrator (the "Bankruptcy Administrator") filed a motion to dismiss the Chapter 7 bankruptcy case of Virginia M. Bogan (the "Debtor") for substantial abuse of the Bankruptcy Code under Section 707(b). The Court held a hearing on this matter on February 21, 2006. Robyn C. Whitman appeared on behalf of the Bankruptcy Administrator, and John W. Lunsford appeared on behalf of the Debtor. After consideration of the motion to dismiss, the evidence presented at the hearing, the arguments of the parties, and the relevant law, the Court will grant the Bankruptcy Administrator's motion to dismiss the Debtor's case.

**I. BACKGROUND**

On August 30, 2005, the Debtor filed her Chapter 7 bankruptcy petition. The Debtor listed primarily consumer debts on her schedules, mostly consisting of unsecured indebtedness of $36,776.57, a mortgage totaling $166,289.62, and a vehicle lien totaling $3,605.75. As of the date of the petition, the Debtor was employed as a registered nurse earning a net monthly income of $2,527.23.[1] The Debtor has no dependents.

[1]The Debtor nets $3,062.11 per month from her employer. The Debtor testified that she typically receives a tax refund of approximately $4,300.00 per year. Adding an estimated monthly amount from tax refunds and the funds withdrawn from the Debtor's paycheck for her 403(b)

The Debtor's Schedule J showed monthly expenses of $3,457.93.[2] After meeting with the Chapter 13 Trustee and reassessing her actual monthly expenses, the Chapter 13 Trustee determined that the Debtor's actual monthly expenses total $2,505.33.

The Debtor's bankruptcy was mainly the result of credit card debt that accumulated over time and the cessation of child support payments received by the Debtor in the amount of $500.00 per month.[3]

The Debtor attempted to manage her credit card debt in numerous ways outside of bankruptcy. The Debtor refinanced her home and used approximately $12,000.00 she received from the refinance to pay down her credit card debt and for other living expenses. She testified that she made numerous calls to credit card companies to reschedule payments, that she borrowed money from her retirement account to pay on her credit cards, and that she visited an accountant for advice on how to repay her debts. She testified that filing for bankruptcy protection was her last resort.

## II. DISCUSSION

The Bankruptcy Administrator alleges that the Debtor is substantially abusing the Bankruptcy Code on the basis that the filing of her petition is an attempt to take unfair advantage

retirement plan, 403(b) retirement loan repayment, supplemental life insurance, supplemental disability insurance, and medical flex account, the Chapter 13 Trustee established that the Debtor's actual monthly income is $3,325.44.

[2]Since the Petition Date, the Debtor has surrendered her residence and is currently residing in an apartment. Her mortgage payment was $1,891.56 per month. Her apartment rent is $900.00 per month, reducing her total monthly expenses by $991.56.

[3]The Debtor testified that she received six years of child support payments of $500.00 per month that were owed by her ex-husband for arrearage in child support payments. The last scheduled arrearage child support payment was paid in June of 2005.

of her creditors. The primary grounds for the Bankruptcy Administrator's allegation are that the Debtor incurred debt beyond her ability to pay and that the Debtor has a meaningful ability to repay her debts in a Chapter 13 case.

Section 707(b) of the Bankruptcy Code provides that the Court may dismiss a case filed by a Chapter 7 debtor whose debts are primarily consumer debts, if the Court finds that granting the debtor relief would be a substantial abuse of the Bankruptcy Code. 11 U.S.C. § 707(b). The burden of proving substantial abuse rests on the moving party. In re Vansickel, 309 B.R. 189, 213 (Bankr. E.D. Va. 2003). Moreover, there is a statutory presumption in favor of granting the relief requested by the debtor in determining whether to dismiss a case. 11 U.S.C. § 707(b). As the leading treatise on bankruptcy states:

> [T]he statutory presumption is obviously meant to be something more than simply a rule about the burden of proof, since that burden would already have been on the party seeking to dismiss the case. . . . It appears that the presumption is an indication that in deciding the issue, the court should give the benefit of any doubt to the debtor and dismiss a case only when a substantial abuse is clearly present.

6 Collier on Bankruptcy ¶ 707.04[5][a], p. 707-27 to 707-28 (Alan N. Resnick & Henry J. Sommer, eds., 15th rev. ed. Matthew Bender 2004). See also Harris v. United States Trustee (In re Harris), 279 B.R. 254, 259 (B.A.P. 9th Cir. 2002)(noting that the lack of clarity in the statute was akin to inspired tergiversation and concluding that the burden of proof necessary to overcome the presumption was not "clear abuse," but was one of "substantial abuse" as stated in the statute).

Abuse of the Bankruptcy Code occurs under Section 707(b) when a debtor attempts to use the provisions of the Code to get a "head start" rather than a "fresh start." Green v. Staples (In re Green), 934 F.2d 568, 570 (4th Cir. 1991)(providing that Section 707(b) allows "a

bankruptcy court to deal equitably with the situation in which an unscrupulous debtor seeks to gain the court's assistance in a scheme to take unfair advantage of his creditors."); In re Schmonsees, No. 01-10844, 2001 Bankr. LEXIS 1896 at *5 (Bankr. M.D.N.C. 2001)("Section 707(b) should be applied in a manner in which a truly needy debtor is allowed a fresh start, while denying a head start to the abusers."). In the Fourth Circuit, a "totality of the circumstances" test is used in making a determination of substantial abuse under Section 707(b) because it is consonant with Congressional intent to punish the abusers of the Bankruptcy Code and with the statutory presumption in favor of granting the relief requested by a debtor. Green, 934 F.2d at 573. Some of the relevant factors to be evaluated in the "totality of the circumstances" approach include:

> (1) Whether the bankruptcy petition was filed because of sudden illness, calamity, disability, or unemployment;
> (2) Whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to repay;
> (3) Whether the debtor's proposed family budget is excessive or unreasonable;
> (4) Whether the debtor's schedules and statement of current income and expenses reasonably and accurately reflect the true financial condition; and
> (5) Whether the petition was filed in good faith.

Id. at 572 (citations omitted). The Fourth Circuit also stated "that the majority of the cases hold that the debtor's ability to repay is the primary factor to be considered." Id.

A. Ability to Repay Debts

The Court finds that the Debtor does have an ability to repay a significant portion of her debt. An appropriate method of evaluating whether a debtor has the ability to repay debts is to determine what amount of that indebtedness could be repaid in a hypothetical Chapter 13 plan. See, e.g., Shaw, 310 B.R. at 541 ("In contrast with the second factor of the 'totality of the

circumstances' test, where 'ability to repay' analyzes the debtor's historical ability to repay debts, 'ability to repay' in this context analyzes the degree to which the debtor could pay creditors a significant portion of the debt under a Chapter 13 plan."). Although a number of courts have considered the percentage of total indebtedness that could be repaid through a hypothetical Chapter 13 plan, there is no bright line test. As stated by one bankruptcy judge:

> While it may be true that the higher the percentage of debt a Debtor could pay with future earnings, the more likely it is that a court would find substantial abuse, the converse is not true. Otherwise debtors would be rewarded for having more debt, rather than less. Instead of the percentage of debt, the determination of a debtor's ability to fund a Chapter 13 plan is based on a consideration of the debtor's ability to make a substantial effort in repaying his or her debts.

In re Praleikas, 248 B.R. 140, 145 (Bankr. W.D. Mo. 2000).

The Bankruptcy Administrator asserted that the Debtor is able to repay a substantial portion of her unsecured debt based on the amount of excess income that she has each month. Pursuant to the calculations made by the Chapter 13 Trustee, through the testimony of Kathryn Fields,[4] the Debtor has $820.11[5] each month with which to repay creditors. In her calculations, the Chapter 13 Trustee properly did not include deductions from the Debtor's paycheck for contributions to the Debtor's 403(b) retirement plan, 403(b) retirement loan repayment,

---

[4] Ms. Fields is the chief clerk with the Chapter 13 Office in Greensboro, North Carolina. She has been employed with the Chapter 13 Office since 1978 and is in charge of reviewing Chapter 7 potential abuse cases. Ms. Fields testified that she reviews the reasonableness of a debtor's budget to determine if there is any excess income that could fund a Chapter 13 plan.

[5] The Debtor testified that her medical expenses have increased by approximately $30.00 per month and that she anticipates having car repair expenses of approximately $1,000 per year. Further, the Debtor's natural gas bill for December of 2005 was $263.89 and for January of 2006 was $330.00. The Debtor's petition listed $210.00 per month as her expense for heating fuel and electricity combined. The Court will accept as true the Debtor's assertion that her expenses should be increased as set out above and will add an estimated $250.00 per month to the Debtor's total monthly expenses. As a result, the Debtor has excess income of $570.11 per month.

supplemental life insurance, supplemental disability insurance, and medical flex account. See, e.g., In re Vansickel, 309 B.R. 189, 203 (Bankr. E.D. Va. 2004)(finding that debtor was paying 401(k) contributions to himself at the expense of his creditors; these payments were deemed unreasonable and excessive; the court stated, "In the context of a 707(b) determination, such payments must be treated as disposable, available income for purposes of evaluating whether the debtor has the ability to repay his creditors."); In re Rodriguez, 228 B.R. 601, 602 (Bankr. W.D. Va. 1999)(finding substantial abuse when debtor could pay all creditors in full within ten months if he suspended his voluntary contribution to his retirement account); In re Norris, 225 B.R. 329, 333 (Bankr. E.D. Va. 1998)(finding debtor's budget excessive where debtor chose to make contributions to his 401(k), which diverted funds that could otherwise be used to pay creditors.)

The $570.11 of disposable income would yield a 56% repayment to unsecured creditors within 36 months. This factor weighs heavily toward a finding of substantial abuse.

B. Reasonableness of Budget

The parties do not dispute and the Court accepts as true that the Debtor's budget, as amended by the Debtor in her Chapter 13 interview,[6] is reasonable. At the hearing, the Debtor stated that her monthly expenses are as set forth in the amended Schedule J produced from the Chapter 13 meeting. In addition, the Debtor testified that her prescription costs had increased $30.00, that her car repair costs will likely total $1,000 per year, and that her natural gas bills have increased her monthly electricity and heating fuel costs. The Court has added these

---

[6]The Debtor made the following changes to her Schedule J: rent reduced from $1,891.56 to $900.00; telephone increased from $45.00 to $55.00; food increased from $300.00 to $400.00; clothing increased from $50.00 to $100.00; medical expenses increased from $245.00 to $300.00; transportation increased from $125.00 to $230.00; rental insurance increased from $0.00 to $30.00.

expenses to the Debtor's total monthly expenses as set forth in footnote 5.

C. Illness, Calamity, Disability, or Unemployment

The Debtor's bankruptcy filing was not due to sudden illness, calamity, disability, or unemployment. The Debtor's employment has not changed in eight years. The Debtor does suffer from some medical and dental complications but none that were of a sudden nature so as to bring about this bankruptcy filing. The Debtor argued that the loss of the $500.00 per month child support arrearage payment in June of 2005 caused her great financial distress. While it is certainly understandable that a loss of $500.00 per month would negatively affect the Debtor's monthly budget, the loss of the child support payments was not sudden or unexpected. The child support payments were for a set period of six years and were scheduled to end in June of 2005. The Debtor knew that the child support payments would end in June of 2005 for the six-year period preceding it.

D. Cash Advances and Consumer Purchases in Excess of Ability to Repay

The Bankruptcy Administrator contends that the Debtor incurred approximately $36,776.57 in unsecured debt when the Debtor did not have any reasonable expectation that she would be able to repay it. Incurring indebtedness without any reasonable expectation of being able to repay it is a factor for a court to consider when determining if a debtor is attempting to substantially abuse the Bankruptcy Code, but a court should not so broadly interpret this factor to foreclose the availability of Chapter 7 relief to nearly all consumer debtors; rather, a debtor's ability to repay consumer purchases and cash advances should be interpreted in a manner consistent with the Debtor's reasonable expectations of repayment at the time that the debt was incurred. Vansickel, 309 B.R. at 211. Indeed, nearly all debtors in bankruptcy have incurred

obligations in excess of their ability to repay, and the bankruptcy court is mandated to adhere to the statutory presumption that a debtor is entitled to the relief originally sought. 11 U.S.C. § 707(b). Taken in its proper context, a court should examine the nature of the debts incurred, if the debts were consistent with the debtor's financial status, and whether there was an unexplained change in spending patterns – all of which must be considered in light of whether a debtor is taking unfair advantage of creditors. Vansickel, 309 B.R. at 211.

In the Pre-trial Stipulations filed with the Court on February 9, 2006, both parties stipulated that the Debtor incurred debts beyond her ability to repay. Thus, the required burden of proof to establish that the Debtor incurred debts beyond her ability to repay has been met.

E. Accuracy of the Debtors' Schedules

The Bankruptcy Administrator did not allege that the Debtor's schedules were inaccurate. Thus, there is no issue raised regarding the accuracy of the Debtor's Schedules, and the Court accepts that they were accurate.

F. Good Faith

The Bankruptcy Administrator did not argue that the Debtor did not file her petition in good faith. The sole argument of the Bankruptcy Administrator was that to allow this Debtor to continue in a Chapter 7 in light of the significant excess income that she could pay to her creditors in a Chapter 13 would be a substantial abuse of the bankruptcy process. As no issue was raised regarding the good faith of the Debtor, the Court concludes that the Debtor filed her petition in good faith.

CONCLUSION

Having found that the Debtor's lowest estimated monthly budget surplus would pay 56%

to unsecured creditors in a Chapter 13 case, the Court believes that the Debtor has the ability to make a substantial effort to repay her debts. The Court is satisfied that the Debtor filed her petition in good faith,, that the Debtor's schedules are accurate, and that the Debtor incurred debts beyond her ability to repay them. After weighing the totality of the circumstances surrounding the Debtors' bankruptcy filing and determining that the Debtor has an ability to repay a meaningful amount of her debt, the Court finds that the Debtor's case constitutes a "substantial abuse" of the Bankruptcy Code within the meaning of 11 U.S.C. § 707(b).

This opinion constitutes the Court's findings of fact and conclusions of law. A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021.

February 23, 2006

THOMAS W. WALDREP, JR.
UNITED STATES BANKRUPTCY JUDGE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

IN RE: )
)
VIRGINIA M. BOGAN, ) Case No. 05-12725
)
Debtor. )
______________________________)

PARTIES IN INTEREST

John W. Lunsford, Esquire

Robyn C. Whitman, Esquire

Virginia M. Bogan